LOUIS FRANCHINO, ALSO KNOWN AS LOUIS FRANKLIN, BY NEXT FRIEND, PROSECUTOR, v. THE OVERSEER OF THE POOR OF THE CITY OF ORANGE ET AL., RESPONDENTS.

Submitted January 28, 1927—Decided March 24, 1927.

1. Prosecutor was tried in the Court of Quarter Sessions in bastardy proceedings brought by an overseer of the poor. The jury, in the absence of the judge, brought in its verdict that "we find in favor of the state," and, subsequently, the judge made an order of filiation which set forth that the jury had found that the prosecutor was the reputed father of the bastard child, the birth of which formed the basis of the proceedings—*Held*, that the recital in this order shows that the trial judge must have molded the verdict in accordance with the recital, which he was empowered to do.

2. Where there are three judges of the Court of Common Pleas in a county, who are also judges of the Court of Quarter Sessions, the statute (*Pamph. L.* 1918, *p.* 137) gives them all, sitting together, and to each of them sitting separately, the same power, authority and jurisdiction as if there were but a single judge, and a judge of that court may make an order in a case where the judge who heard it has since resigned his office.

3. The office of an order *nunc pro tunc* is to supply some omission in the record of an order which was really made, but there was a

failure to enter it in the record, so that an order in a bastardy proceeding which merely sets forth an omission to mold a verdict in accordance with the issue tried, does not transgress the rule that the court has no power to give effect to its mandate as of a time anterior to that when it was in reality made.

On *certiorari*.

Before Justices PARKER, BLACK and CAMPBELL.

For the prosecutor, *J. Victor D'Aloia.*

For the respondents, *Howe & Davis.*

The opinion of the court was delivered by

CAMPBELL, J. On September 29th, 1925, the prosecutor was tried in the Essex County Quarter Sessions Court before Judge Porter and a jury, in bastardy proceedings brought against him by the overseer of the poor of the city of Orange. This proceeding was undoubtedly upon appeal from the finding of the magistrate before whom complaint had been brought by the overseer of the poor.

On September 29th, 1925, in the absence of Judge Porter, the verdict of the jury was received by the clerk and such verdict as rendered, and received and entered by the clerk, was, "We find in favor of the state."

On June 17th, 1926, Judge Dallas Flannagan, one of the then three judges of the Court of Common Pleas of Essex county (Judge Porter having resigned as a judge of that court in April, 1926), made an order as follows:

"It appearing to the court that the above-stated appeal wherein the overseer of the poor of the city of Orange, New Jersey, was the complainant-appellant, and Louis Franchino, also known as Louis Franklin, was defendant-appellee, was duly tried on September 29th, 1925, before Honorable Newton H. Porter presiding, and that the jury returned a verdict 'in favor of the state,' and such verdict having been duly recorded, it is now on this 17th day of June, 1926, ordered that the verdict 'in favor of the state' as heretofore returned by the jury be molded in form to read as follows: 'Guilty of being the putative father of the bastard child.' "

This order shall have the same force and effect as though the same had been made and entered on September 29th, 1925.

On October 8th, 1925, Judge Porter made an order of filiation in which it is recited as follows:

"This cause coming on to be heard in the presence of Richard J. Fitzmaurice, Esq., of the firm of Howe & Davis, attorneys for said Thomas Brennan, overseer of the poor of the city of Orange, and William A. Lord, Esq., attorney for the above-named Louis Franchino, also known as Louis Franklin, and the trial having been heard before this court and a jury, and the testimony of witnesses under oath having been given and the *said jury having found that the said Louis Franchino, also known as Louis Franklin, is the reputed father of the bastard child born to Cecilia Franchino, also known as Cecilia Franklin,* on February 16th, 1925  *  *  *."

The writ of *certiorari* in this case brings up for review these proceedings, and we are asked to set aside the *nunc pro tunc* order of Judge Flannagan, dated June 17th, 1926.

The first reason urged is that no one, other than Judge Porter, before whom the matter was heard, had power to make an order molding the verdict, and that such order of June 17th, 1926, overrules the determination of Judge Porter.

That no other judge than Judge Porter had jurisdiction in the premises is without merit. Although in Essex county there are three judges of the Court of Quarter Sessions, the statute (*Pamph. L.* 1918, *p.* 137) gives all of them sitting together, and each of them sitting separately, the same powers, authority and jurisdiction, as if there were but a single judge.

It is undisputed that Judge Porter resigned at the beginning of the April term, 1926. At the time the order of June 17th, 1926, was made he was not a judge of the Quarter Sessions of Essex county. Such a situation is also provided for by *Pamph. L.* 1900, *p.* 334, § 11 (2 *Comp. Stat., p.* 1727, § 101), placing the power and authority that Judge Porter otherwise would have had in the premises, in his successor, &c.

Now it is said that this order overrules the finding of Judge Porter, because in the depositions of the court clerk taken in this proceeding, he says that when on the day fol-

lowing the rendering of the verdict he called Judge Porter's attention to it the latter replied "let the verdict stand," and never directed the clerk to change it. This, however, can have no force in the face of the recital in the order of filiation made by Judge Porter on October 8th, 1925, before referred to and quoted.

The next reason for setting aside the order is that the verdict could not be molded after the expiration of the term in which it was rendered. Counsel for prosecutor does not direct us to any authority in support of this contention, and we find none.

The third reason is that the court was without power to make this order *nunc pro tunc*.

In support of this *Davis While Markets* v. *Lefas et al.,* 96 *N. J. Eq.* 605, is cited. But the situation in that case is not analogous to the facts in the case before us. There it was said: "The underlying question which the case presents, therefore, is whether it was within the power of the Court of Chancery to make a *nunc pro tunc* order, the effect of which—if it was valid—was to destroy the then existing status of the present appellants." There the proceeding was to wind up the affairs of a partnership through a receiver. The property was encumbered by a chattel mortgage, and upon being sold by the receiver allowances were made to the receiver and his counsel exhausting all, or practically all, of the proceeds of the sale. The validity of the chattel mortgage had been questioned and a special master had reported in favor of its validity, to which report exceptions had been filed. These proceedings were pending at the time of the allowance of the before-mentioned fees. The mortgagees appealed from the order allowing fees, and, subsequently, and while such appeal was pending, the Vice-Chancellor found, upon the exception to the special master's report, that the chattel mortgage was not *bona fide* and advised an order to that end, *nunc pro tunc,* as of a date prior to the order allowing the fees and compensation of the receiver and council.

The result of this was, as before stated, to destroy the status of the appeal of the mortgagees. In the same matter the Chief Justice, writing the opinion, held: "The office of

an order *nunc pro tunc* is only to supply some omission in the record of an order which was really made but omitted from the record. If an order is actually made by the court, but there is a failure to enter it, the court may correct the mistake so as to make the record show the order which the court actually made as of the time when it was in fact made; but no court has power to make an order *nunc pro tunc,* the purpose of which is to give effect to its mandate as of a time anterior to that when it was in reality made. *Wilson* v. *Vance, 55 Ind.* 394; *Hegeler* v. *Henckell, 27 Cal.* 491; *Priest* v. *McMaster, 52 Mo.* 60; *29 Cyc.* 1516, § B, and cases cited."

Now, the recital in the order of Judge Porter of October 8th, 1925, shows beyond the possibility of successful dispute that he must, at or preceding the time of making such order, have ordered that the verdict be molded in the manner set out in the recital of such order of filiation.

That being so, the order of June 17th, 1926, does not transgress the rule laid down in *Davis White Markets* v. *Lefas et al., supra,* and, we think, the order of filiation is legally supported, within itself, and without the order of June 17th, 1926.

The final reason is that the order in question was improvidently made and illegally entered.

This is argued under two heads—

*First,* that the order was made without notice to the prosecutor. Our attention is not directed to any authority for this contention, and we find none.

*Second,* that the verdict as rendered was so uncertain that the intention of the jury could not be determined, and, therefore, it could not be molded.

Now, the verdict as rendered was: "We find in favor of the state." The trial judge in his instructions to the jury had said: "Now, the burden is on the state, represented here by the overseer of the poor, to prove by the preponderance of evidence the necessary ingredients of the charge."

The verdict as rendered, therefore, was not uncertain, but on the contrary there could be only one conclusion as to the intention of the jury.

Under such circumstances, it is not only the right but the duty of the court to mold the verdict. *Kilgus* v. *Wayne Co.,* 85 *N. J. L.* 351, 353.

The proceedings under review are affirmed and the writ of *certiorari* dismissed, with costs.